O'KEEFE v. DEGNON REALTY & TERMINAL IMPROVEMENT CO.

(Supreme Court, Appellate Division, Second Department. December 30, 1910.)

1. MASTER AND SERVANT (§ 89*)—INJURY TO SERVANT—TEMPORARY RAILROAD—
MASTER'S NEGLIGENCE.

Plaintiff was employed as a brakeman on a temporary railroad used to carry concrete from a mixer to the works. The structure was placed so near the track that the cars had to be kicked onto the switch under the mixer chute, and the engine could not pass the mixer without colliding with it. Defendant had provided a box on the outside front of the engine to hold coupling pins, but those pins having been placed in a tool box in the cab, plaintiff was endeavoring to get some of them, and as he stood in the cab with one hand on the window frame the engineer backed the engine into collision with the gear covering the mixer, catching plaintiff's hand, causing the injury. *Held*, that plaintiff was not necessarily on the cab in the performance of his duty, defendant having no reason to believe that coupling pins would be kept in the cab instead of in the box provided therefor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 153; Dec. Dig. § 89.*]

2. MASTER AND SERVANT (§ 185*)—INJURY TO SERVANT—FELLOW SERVANT.

Where a brakeman went to the cab of an engine to get certain coupling pins from a tool box therein, and was injured by the engineer negligently backing the engine against a concrete mixer, and plaintiff's presence in the cab was necessitated by the engineer's negligence in failing to see that coupling pins were in a box provided for that purpose on the outside of the engine, and his injury was due to the engineer's negligence in operating the engine, in either event the engineer was plaintiff's fellow servant, for whose negligence plaintiff could not recover.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 185.*]

Appeal from Trial Term, Queens County.

Action by Charles O'Keefe, an infant, by Annie O'Keefe, his guardian ad litem, against the Degnon Realty & Terminal Improvement Company. From a judgment for plaintiff and from an order denying defendant's motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, BURR, and RICH, JJ.

E. Clyde Sherwood (Joseph F. Murray, on the brief), for appellant.

J. Brownson Ker (M. P. O'Connor, on the brief), for respondent.

WOODWARD, J. The plaintiff was employed by the defendant as a brakeman in connection with the operation of a temporary railroad used to carry concrete and other materials in and about a certain work being constructed in Long Island City in the year 1908. The premises where the work was being carried on were in a crude condition, incident to the work, and tracks were laid about the premises, with switches for reaching various parts of the work with the dump cars and dummy engines, which were operated without tenders. One of the switches had been placed for the purpose of reaching a concrete mixer, and this mixer had been placed so near to

the track that the cars could be run under the chutes from the mixers, but none of the engines could go past the mixer without colliding with the same. As a result of this situation it was customary to "kick" the cars in onto the switch, and then the employés would put them in place with pinch bars. When the cars were loaded and ready to be taken out, the engine would be backed down the switch as near as possible, and then the cars would be attached with a rope or other contrivance and drawn out. This practice appears to have varied somewhat, and the engine known as the "Pittsburg" appears to have been able to get near enough to place the cars without detaching them by backing down to a point where a projection from the mixer scraped along the side of the cab of the engine. On the 26th day of September, 1908, while the plaintiff was employed as a brakeman upon the premises above described, he took a place in the cab of the engine, and says he was told by the engineer to get out some coupling pins to be used in attaching some other cars, the engine being used at the time in backing cars down to the mixer. According to the testimony of the plaintiff, these pins were placed in a box inside of the cab, though generally on the other engines these pins were placed in a box on the outside and front of the engine, and a box for this purpose was provided on this particular engine, but for some reason not pointed out this box was not used on the Pittsburg. The engine was moving backward, and the plaintiff was sitting with his face to the rear. When he was told to get the pins out he had to reach down into the box, and for this purpose reached out his hand and took hold of the window frame of the cab to hold himself in position, and with the other hand reach after the pins. While in this position the engineer continued to move the engine backward, when the cab came into collision with a gear covering of the mixer, catching the plaintiff's hand and doing the injury for which he has recovered a substantial verdict. The negligence alleged in the complaint is that the plaintiff, while lawfully upon the engine in question, "and without any fault whatsoever on his part, said engine came in contact with another engine belonging to the defendant, which was in the path of said engine, and, as a result thereof, this plaintiff received personal injuries, and all of which was solely due to and solely the result of the negligence and carelessness of the defendant in failing to give this infant" (aged 18 years) "plaintiff a reasonably safe and suitable place in which to perform his work."

If the accident had happened, as alleged in the complaint, by a collision between two engines, one of which was in the path of the other, it is obvious that the negligence was in the operation of the engines, and not in providing a place in which to work. The cab of the engine was a reasonably safe place in which to work so long as there was no collision with the other engine. It is equally true, it seems to us, that the cab was a safe place in which to do all of the work for which the cab was designed, and that it was only because the engineer, who concededly knew all of the dangers, backed his engine down into collision with the concrete mixer that there was

any danger for the plaintiff. The railroad here in use was not designed for general railroad purposes; it was constructed for a temporary purpose in a temporary way; it was designed to move the concrete from these mixers to various parts of the work, and it was not necessary that the tracks should be laid for permitting the engines to go past. All of the practical results could be accomplished by backing the cars in from either direction, and this mode of operation must have been open and obvious to every man at work there, together with the reasons therefor. The plaintiff was 18 years of age. There is no suggestion that he was not reasonably intelligent. He had worked there for several months, and while he testifies that he had never ridden on an engine going past this mixer, for the very obvious reason that none had been past it on this switch, there is nothing in the evidence to show that he did not know all of the surroundings, while it does appear that he understood fully that the engines did not run past this mixer, and the reason must have been as open and obvious to him as to others there employed. Assuming, therefore, that the premises generally constituted the place in which he was called upon to work, it must have been obvious to him, as to all persons, that there was nothing dangerous in the location of the mixer and the tracks so long as the engines were operated with a view to merely placing these cars and drawing them out after they were loaded from the chutes of the concrete mixers. This must have been known to the defendant as well. If they looked about the premises and saw the location of the switch and of the mixer, they must have known that the engines could not go by the mixer without hitting it, and as they did not require that the engines should go by it, but that the cars should be backed in, the premises could not have presented any condition of affairs which would have impressed a reasonably prudent man as likely to produce the accident which happened. There was absolutely no danger to any one in the cab of the engine, in so far as this concrete mixer was concerned, if the engine was properly operated, if it was used in the manner which the obvious necessities of the case called for, and which appears to have been the manner designed by the defendant; for it clearly appears that the method of operation contemplated by the master did not contemplate having the engine run past the mixer, or near enough to it to come into collision with any part of it.

We have thus far assumed that the plaintiff was necessarily upon the cab of the engine in the performance of his duties, and that this necessity was one for which the master was responsible, but the evidence does not support this assumption. The undisputed testimony is that the plaintiff was hurt while trying to get some coupling pins which were contained in a tool box in the cab of the engine, but it nowhere appears that the master had provided this tool box for the purpose of storing these coupling pins. On the other hand, it does appear that all of the engines in use by the defendant, including the Pittsburg, had a box for the purpose of holding these coupling pins on the outside front of the engine, and it does not appear that the defendant had any reason for believing that these pins

were to be placed in the cab of the engine, or that a brakeman would have any occasion for being in the cab. There was a place on the outside front of the engine for the pins. There were no brakes, so far as appears, to be operated on the engine. The evidence does not disclose that the plaintiff had any duties to perform which required his presence upon the engine, except as he might have been there for the purpose of getting the pins, which properly belonged on the outside front of the engine, which was a proper place for them provided by the master. Engines of the type in use at the place of the accident do not require a fireman. They are usually operated by a single man, filling both positions, and the engineer's place was on the right-hand side of the engine looking forward, so that the defendant had no reason for expecting that any one would be on the left-hand side of the engine—certainly not the brakeman, whose duties did not call him there at any time, so far as the evidence discloses, if the work was done in the manner that the master had provided for. If the pins had been placed in the box provided for them by the master, there would have been no excuse whatever for the plaintiff's presence upon the engine so far as the evidence discloses, and whatever might have been the defendant's duty toward one who was present upon the engine in the performance of his necessary duties, as required by the master, we think it is not the law that it owed any affirmative duty to the plaintiff which it had not performed in providing all of the equipment necessary to the safe discharge of his duties. If the engineer or other employés of the defendant chose to disregard the provisions made by the master, and produced a condition where it was necessary for the brakeman to be upon the engine, that is not the negligence of the master, but that of a fellow servant (assuming the plaintiff himself did not make the necessity), and the verdict against the master ought not to stand. The place provided by the defendant for the plaintiff to work, assuming that the work was in getting the coupling pins, was on the outside front of the engine. This place, in so far as the mixer was concerned, at least, was absolutely safe; by no possibility, without running off the track, could the front of the engine be brought into contact with the mixer, and it was only because some one other than the master had placed the pins in the engine cab, where they were not properly kept under the implied directions of the master, that the plaintiff had any excuse for being in the engine cab, or in any position to be injured by contact with the mixer. Being in the engine cab, there was no danger to the plaintiff, except for the fact that the engineer operated the engine in a careless and negligent manner, not necessary to the performance of the work required of him by the master, and this negligence on the part of the engineer was the sole proximate cause of the accident. The master having performed the duty of providing reasonably competent fellow servants was not bound to anticipate that the engineer would operate the engine in such a manner as to bring it into collision with the mixer, that not being necessary to the work in hand; and it was not bound to anticipate that the brakeman would be in the cab, or that he would be called upon

to be in the position which he was occupying at the moment of the accident.

The judgment and order appealed from should be reversed and a new trial granted, costs to abide the event.

HIRSCHBERG, P. J., concurs. JENKS, BURR, and RICH, JJ., concur on the second ground stated in the opinion.